

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

*Connecticut Financial Center*      *(203)821-3700*
*157 Church Street, 25th Floor*      *Fax (203) 773-5376*
*New Haven, Connecticut 06510*      *www.justice.gov/usao/ct*

June 7, 2017

United States District Court
District of Connecticut
FILED AT HARTFORD

June 7 ,20 1 7

R. aufander
D   by Clerk

William F. Dow III, Esq.
Jacobs & Dow, LLC
350 Orange Street
New Haven, CT 06511

Re:   United States v.  Peter Ressler
Criminal No. 3:17CR  14 ·123 (AVC)

Dear Attorney Dow:

This letter confirms the plea agreement between your client, Peter Ressler (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the referenced criminal matter.

## THE PLEA AND OFFENSE

The defendant agrees to waive his right to be indicted and to plead guilty to a four-count Information charging him with wire fraud, in violation of 18 U.S.C. § 1343; embezzlement from a bankruptcy estate, in violation of 18 U.S.C. § 153; and bankruptcy fraud, in violation of 18 U.S.C. § 157.

The defendant understands that, to be guilty of wire fraud under 18 U.S.C. § 1343, the following essential elements of the offense must be satisfied:

1.   There was a scheme to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the Information;

2.   Money or property was the object of the scheme;

3.   The defendant knowingly and willfully participated in the scheme to defraud with knowledge of its fraudulent nature and with the specific intent to defraud;

4.   In execution of the scheme, the defendant caused the use of the interstate wires as specified in the Information.

William F. Dow, *Esq.*
*Page 2*

The defendant understands that, to be guilty of embezzlement from a bankruptcy estate under 18 U.S.C. § 153, the following essential elements of the offense must be satisfied:

1.    A bankruptcy case was pending;

2.    The property at issue was part of the bankruptcy estate of the debtor;

3.    The defendant had access to the property as an attorney; and

4.    The defendant knowingly and fraudulently appropriated for the defendant's own use certain property belonging to the bankruptcy estate.

The defendant understands that, to be guilty of bankruptcy fraud under 18 U.S.C. § 157, the following essential elements of the offense must be satisfied:

1.    There was a scheme to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the Information;

2.    Money or property was the object of the scheme;

3.    The defendant knowingly and willfully participated in the scheme to defraud with knowledge of its fraudulent nature and with the specific intent to defraud;

4.    In execution of the scheme, the defendant made a materially false representation in relation to a bankruptcy proceeding, as set forth in the Information.

## THE PENALTIES

The offense of wire fraud (Count One) carries a maximum penalty of 20 years of imprisonment and a fine of as much as $6.8 million under the alternate fine provision   In addition, under 18 U.S.C. § 3583, the Court may impose a term of supervised release of not more than 3 years to begin after imprisonment. The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to 2 years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

Each offense of embezzlement from a bankruptcy estate (Counts Two and Three) carries a maximum penalty of 5 years of imprisonment and fine of as much as $6.8 million under the alternate fine provision.   In addition, under 18 U.S.C. § 3583, the Court may impose a term of supervised release of not more than 3 years to begin after imprisonment. The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to 2 years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

William F. Dow, *Esq.*
*Page 3*

  The offense of bankruptcy fraud (Count Four) carries a maximum penalty of 5 years of imprisonment and as much as a $6.8 million under the alternate fine provision. In addition, under 18 U.S.C. § 3583, the Court may impose a term of supervised release of not more than 3 years to begin after imprisonment. The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to 2 years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

  As noted above, the defendant is subject to the alternative fine provision of 18 U.S.C. § 3571 on each Count. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

  In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each Count. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

  The defendant is also subject to restitution, as discussed below. Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572 (h), (*i*) and § 3612(g).

<u>Restitution</u>

  In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A on each Count, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of §§ 3663A and 3663. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court. Regardless of restitution that may be ordered by the Court noted above, the defendant agrees to make restitution in the amount of up to $5 million, which figure will be finalized by the parties prior to sentencing and which includes both losses from the offenses of conviction as well as certain losses which the defendant asserts are owed his clients but not taken with the intent to defraud. As a result, the parties note that agreed upon restitution losses will likely be greater than Guidelines losses.[1]

---

[1] The case presents various categories of victims (individuals suffering actual loss by Ressler's actions):

  1) Clients from whom Ressler embezzled monies that never filed a bankruptcy action or for whom he filed a bankruptcy action that was not confirmed. These clients remain victims throughout because the assets ultimately remained the property of those clients.

  2) Clients in confirmed Chapter 11 or Chapter 13 cases. These clients remain victims because the process would not require the clients to liquidate all their assets but instead pay a portion to creditors and thus the clients retained an interest in the embezzled monies.

  3) Creditors of confirmed plans. The parties agree that identifying creditors sufficient to participate in the restitution order would unnecessarily complicate and delay the sentencing process.

William F. Dow, *Esq.*
*Page 4*

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) truthfully disclosing to the United States Attorney's Office and the United States Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

William F. Dow, *Esq.*
*Page 5*

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

- The defendant's base offense level under U.S.S.G. § 2B1.1 is 7.

- The base offense level is increased by 16 as the Guidelines fraud/embezzlement loss is between $1.5 million and $3.5 million.[2]

- The defendant is subject to a 2-level enhancement as the offense involved 10 or more victims under § 2B1.1(b)(2)(A).

- A 2-level enhancement applies under § 2B1.1(b)(9)(B) as the offense involved "a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding."

- An additional 2-level enhancement applies as the defendant abused his position of trust relating to his relationship with his clients under § 3B1.3.

- Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above.

Under the parties' determination, the defendant is subject to a total offense level of 26. Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History

---

[2]   The parties submit that the defendant has, from early in the investigation, admitted fraud-related losses between $1.5 million and $3.5 million. Since the time of those admissions, defense counsel has made additional concessions regarding loss that lack the same level of proof and may be subject to certain act-of-production protections. While total losses may ultimately be greater than $3.5 million for purposes of a final restitution order, as discussed on page 3, the parties agree that readily provable Guidelines fraud losses do not exceed $3.5 million at this time. As a result, the parties agree that the applicable Guidelines loss figure is approximately $3.4 million and implicates a 16 level Guidelines enhancement.

William F. Dow, *Esq.*
*Page 6*

Category and corresponding sentencing ranges if this initial assessment proves inaccurate. A total offense level 26, at Criminal History Category I, would result in a range of 63 to 78 months of imprisonment (sentencing table) and a fine range of $25,000 to $250,000. U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of one to three years. U.S.S.G. § 5D1.2.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence. Neither party will suggest that the Probation Department consider an adjustment not set forth herein.

Notwithstanding the above, the parties agree that the defendant is entitled to a downward departure or variance from the relevant guidelines range for multiple steps taken to assist the government and the civil authorities, as will be outlined for the Court at sentencing, at which point the Court may determine to credit the departure/variance and determine what weight, if any, to give it.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

<u>Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence</u>

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction and sentence. The defendant agrees not to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. Nor will he pursue such an appeal or collateral attack to challenge the sentence imposed by the Court if that sentence does not exceed 78 months of imprisonment, a 3-year term of supervised release, a fine of up to $250,000, a $400 special assessment, restitution to relevant victims up to that agreed in the restitution section above, even if the Court imposes such a sentence based on an analysis different from that specified above. Similarly, the Government will not appeal a sentence imposed within or above the stipulated sentencing range. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. The defendant acknowledges that he is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentence that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of

William F. Dow, *Esq.*
*Page 7*

appellate and collateral review rights shall preclude the defendant from raising a claim of
ineffective assistance of counsel in an appropriate forum.

### Information to the Court

The Government reserves its right to address the Court with respect to an appropriate
sentence to be imposed in this case. Moreover, the Government will discuss the facts of this
case, including information regarding the defendant's background and character, 18 U.S.C.
§ 3661, with the United States Probation Office and will provide the Probation Officer with
access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

### Waiver of Right to Indictment

The defendant understands that he has the right to have the facts of this case presented to
a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom
would have to find probable cause to believe that he committed the offense set forth in the
information before an indictment could be returned. The defendant acknowledges that he is
knowingly and intelligently waiving his right to be indicted.

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every
stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that
plea if it has already been made, the right to a public trial, the right to be tried by a jury with the
assistance of counsel, the right to confront and cross-examine the witnesses against him, the right
not to be compelled to incriminate himself, the right to testify and present evidence, and the right
to compel the attendance of witnesses to testify in his defense. The defendant understands that
by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court,
there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions
about each offense to which he pleads guilty, and if he answers those questions falsely under
oath, on the record, and in the presence of counsel, his answers may later be used against him in
a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's guilty plea be
vacated for any reason, then any prosecution that is not time-barred by the applicable statute of
limitations on the date of the signing of this plea agreement (including any indictment or counts
the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be
commenced or reinstated against the defendant, notwithstanding the expiration of the statute of

William F. Dow, *Esq.*
*Page 8*

limitations between the signing of this plea agreement and the commencement or reinstatement
of such prosecution.  The defendant agrees to waive all defenses based on the statute of
limitations with respect to any prosecution that is not time-barred on the date the plea agreement
is signed.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty
freely and voluntarily because he is guilty.  The defendant further acknowledges that he is
entering into this agreement without reliance upon any discussions between the Government and
him (other than those described in the plea agreement letter), without promise of benefit of any
kind (other than the concessions contained in the plea agreement letter), and without threats,
force, intimidation, or coercion of any kind.  The defendant further acknowledges his
understanding of the nature of the offense to which he is pleading guilty, including the penalties
provided by law.  The defendant also acknowledges his complete satisfaction with the
representation and advice received from his undersigned attorney.  The defendant and his
undersigned counsel are unaware of any conflict of interest concerning counsel's representation
of the defendant in the case.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and
cannot bind any other federal authority, or any state or local authority.  The defendant
acknowledges that no representations have been made to him with respect to any civil or
administrative consequences that may result from this plea of guilty because such matters are
solely within the province and discretion of the specific administrative or governmental entity
involved.  Finally, the defendant acknowledges that this agreement has been reached without
regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which he
has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to
serve on a jury, to possess firearms and ammunition, and in some states, the right to vote.
Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty
may result in removal from the United States, denial of citizenship, and denial of admission to
the United States in the future.  The defendant understands that pursuant to section 203(b) of the
Justice for All Act, the Federal Bureau of Prisons or the United States Probation Office will
collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant
understands that the Government reserves the right to notify any state or federal agency by which
he is licensed, or with which he does business, as well as any current or future employer of the
fact of his conviction.

William F. Dow, *Esq.*
*Page 9*

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the conduct that forms the basis of the Information in this case.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw his guilty plea.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

CHRISTOPHER W. SCHMEISSER
ASSISTANT UNITED STATES ATTORNEY

William F. Dow, *Esq.*
*Page 10*

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_____               06/7/17
PETER RESSLER                                               Date
The Defendant

     I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____               6/7/17
WILLIAM F. DOW, ESQ.                                  Date
                                                          Attorney for the Defendant

William F. Dow, *Esq.*
*Page 11*

## STIPULATION OF OFFENSE CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that gives rise to the defendant's agreement to plead guilty to the Information:

At all times relevant to this Information, the defendant PETER RESSLER lived and worked in Connecticut.  RESSLER was a licensed attorney with the vast majority of his practice relating to matters before the federal bankruptcy court in Connecticut.

During all relevant times, RESSLER represented many clients, both individuals and corporations, of varying degrees of sophistication.  His clients routinely looked to him to provide legal advice and practical assistance in shepherding them through the difficult process of liquidating personal and business assets under the provisions of Chapter 7 of the federal bankruptcy code; reorganizing their business operations under the provisions of Chapter 11 of the code; or reorganizing their personal financial circumstances under the provisions of Chapter 13 of the code.  RESSLER would also represent clients who sought his expertise outside of bankruptcy to negotiate foreclosure actions with lenders or otherwise seek to settle outstanding debts.  Together these individuals and entities are hereinafter collectively referred to as "the Relevant Victims."

The federal bankruptcy code provides certain protections for debtors from creditors and enables a debtor to liquidate assets and provide for the partial repayment of creditors or to reorganize operations so as to permit repayment of creditors as part of the debtor's continuing operations.

Chapter 7 of the bankruptcy code provides for the liquidation of a debtor's property, namely, the sale of a debtor's nonexempt property and the distribution of the proceeds to creditors. The attorney will work with the client/debtor to identify the relevant assets and assist in the process.  With the filing of a Chapter 7 action with the bankruptcy court, a bankruptcy estate is created as a mechanism to adjudicate and disburse a debtor's assets.  The court will appoint a separate bankruptcy trustee to liquidate the debtor's assets and distribute the proceeds to creditors.  If a client/debtor elects to pursue bankruptcy protection under Chapter 7, the attorney for the debtor will routinely receive a retainer fee for legal services to be provided, as well as bill the client for certain filing fees, prior to formally filing for bankruptcy protection.  In a Chapter 7 action, an attorney representing the debtor must disclose to the court a statement of compensation paid or agreed to be paid, and the court must decide if such compensation is reasonable.  For standard Chapter 7 cases, RESSLER would typically charge a retainer fee of $975, plus an additional $310 filing fee.

Debtors faced with significant liabilities and who had ongoing sources of regular income, including individuals, corporations, partnerships, and sole proprietorships, might prefer to remain in business and avoid liquidation and avail themselves of the protections of Chapter 11 (usually for businesses) or Chapter 13 (for individuals).  Under Chapter 11 of the bankruptcy code, the debtor may seek an adjustment of debts, either by reducing the debt or by extending time for repayment, or may seek a more comprehensive reorganization.  With the filing of a Chapter 11 action, a bankruptcy estate is created to marshal a business debtor's assets and liabilities and to

William F. Dow, *Esq.*
*Page 12*

allow the restructuring of the business to pay off obligations over time from continuing operations. If the matter proceeds under Chapter 11, the debtor is authorized to continue to operate a business using specifically designated debtor-in-possession bank accounts for ongoing operations. While it is unusual for a debtor's attorney to hold debtor assets, debtor's counsel is often involved with the filing of monthly operating reports with the bankruptcy court to provide oversight of assets. In a Chapter 11 action, the debtor's attorney is required to obtain court approval for the payment of accrued attorney's fees. For a standard Chapter 11 case, RESSLER would typically charge a retainer fee of between $7,500 and $25,000 for legal services, with the occasional $50,000 retainer for a particularly complex case.

Chapter 13 of the bankruptcy code allows individual debtors with a regular source of income to seek an adjustment of existing debts and to pay off the debts over time. This Chapter often provides debtors an opportunity to save their homes from foreclosure by allowing them to enter a court-imposed payment plan to catch up on past-due payments. A debtor may avoid pursuing bankruptcy court protection by reaching out-of-court settlements with creditors. To the extent that a formal action is filed, a bankruptcy estate is created, and the debtor's attorney is required to obtain court approval for the payment of accrued attorney's fees. For standard Chapter 13 cases, RESSLER would charge a retainer fee of between $2,500 and $3,500, with an additional $310 for a filing fee.

A debtor may delay foreclosure of the debtor's existing residence by the good faith filing of a Chapter 13 proceeding and the presentation to the court of a plan that would result in the payment of monthly mortgage payments and any payments in arrears. During the pendency of the proceeding, the debtor is required to continue to make certain mortgage payments to be held in trust by the bankruptcy trustee, which will be paid to the creditor if the plan is confirmed. If the bankruptcy court determines that the proposed plan for payment is not workable, the court will dismiss the action, which permits the creditor/mortgage-holder to continue to pursue foreclosure. Any payments being held by the bankruptcy trustee, other than those already paid to or due to other creditors, are returned to the debtor. Many of the Chapter 13 proceedings filed by RESSLER were dismissed, which resulted in monies being remitted to the debtor by the bankruptcy trustee.

Other than the formal filing of a bankruptcy action and other steps related to such an action, RESSLER also engaged in "work outs" where RESSLER would attempt to settle a client's debts with creditors without relying on the protections of bankruptcy. In those circumstances, RESSLER might be entrusted with client assets relating to settlement negotiations with creditors, among other circumstances, and would charge and receive an attorney's fee relating to such matters.

During all relevant times, RESSLER used his role as an attorney to engage in a scheme to defraud the Relevant Victims by various material misrepresentations, as described as follows:

In his role as their attorney, RESSLER, as noted above, would meet with potential clients to discuss the handling of various legal matters on their behalf, including obtaining for them the protections of Chapters 7, 11, and 13 of the bankruptcy code. As a result of those meetings, RESSLER would, in most instances, take a retainer from his clients, representing that he would

William F. Dow, *Esq.*
Page 13

hold such monies in trust until RESSLER provided legal services and was permitted lawful
payment. In truth, as RESSLER well knew, RESSLER would not keep such monies in trust, but
would deposit the monies in his attorney trust account and then spend the monies on other
expenses, knowing the monies had not yet been earned by him. During the relevant time period,
RESSLER spent retainer monies of at least 30 clients that he had not yet earned on expenses
unrelated to those clients.

In addition, RESSLER would in many instances require those clients seeking a Chapter
11 or Chapter 13 reorganization to deposit with him client assets on the representations that such
monies would be held in trust for purposes of the anticipated reorganization. In certain
circumstances, RESSLER obtained such assets after he had filed formal bankruptcy actions,
which created relevant bankruptcy estates for which he had a continuing duty to maintain client
assets under his control and to give appropriate accountings to the bankruptcy court. By way of
example, during the relevant period, RESSLER was entrusted with hundreds of thousands of
dollars from at least ten businesses involved with reorganizations under Chapter 11. In truth, as
RESSLER well knew, during the relevant period, RESSLER often took such client monies
knowing that they would not be held in trust by him but, instead, would often be used by
RESSLER for other purposes.

As part of both Chapter 11 and Chapter 13 filings, RESSLER submitted multiple
documents to the bankruptcy court which represented the status of a debtor's assets and liquidity,
including the debtor-in-possession monthly operating reports. In various instances, RESSLER
had already improperly dissipated a portion of a client/debtor's assets and thus knew that
operating reports filed for certain clients contained false and fraudulent representations, which
misled both the bankruptcy court and creditors as to a debtor's true financial condition. When
asked directly in hearing as to whether certain assets existed in certain accounts, RESSLER
would falsely represent that certain assets existed, when he well knew that they did not as he had
used the monies for other purposes. Examples of such misrepresentations include, but are not
limited to:

a.   On September 9, 2014, in *In re Kerski Associates Limited Partnership* (12-
     30954), RESSLER represented to the bankruptcy court that his firm's trust
     account (hereinafter the "IOLTA account") had a balance of $1,321,877 and that
     he would on that date pay each creditor, with aggregate payments due totaling
     over $950,000 when RESSLER well knew that the account had approximately
     $120,000 and that he would be unable to pay each creditor on that date.

b.   On March 7, 2016, in *In re 329 Greene Street LLC* (11-32184), RESSLER
     represented to the bankruptcy court that settlement funds in the amount of
     $450,000 were in his firm's IOLTA account. In truth and in fact, RESSLER
     knew that the settlement funds were not in the IOLTA account as represented, as
     the monies had been used for other purposes.

c.   On March 10, 2016, in *In re Eternal Enterprises, Inc.* (14-20292), RESSLER
     represented to the bankruptcy court that he was holding six or seven monthly
     payments of $29,000 in his IOLTA account on behalf of the debtor. In truth and

William F. Dow, *Esq.*
*Page 14*

in fact, RESSLER knew that the funds were not in the IOLTA account as represented, as the monies had been used for other purposes.

In circumstances where Chapter 13 actions had been dismissed and monies held by the bankruptcy trustee returned to clients, as described in Paragraph 7, RESSLER would in certain instances have clients remit the monies to him purportedly to hold for settling the dispute with the lender or for other purposes purportedly to assist the client. In fact, RESSLER would use such monies for other purposes.

RESSLER would in other instances, including "work outs" discussed above, request his clients to deposit with him client assets on the representation that such monies would be kept in trust and used to settle disagreements with financial institutions or other creditors, such as the IRS, or for some other purpose on behalf of the clients. In truth, during the relevant time, as RESSLER well knew, the monies were not kept in trust and would frequently be used by RESSLER for other purposes. By way of example, during the relevant period, RESSLER took $64,000 from a client purportedly to purchase property; $180,000 from a client to hold money in escrow; $45,000 from another client purportedly to buy back a home in foreclosure; $100,000 from a client to hold money in escrow; $97,000 from a client to hold money in escrow; $102,000 and $50,000 from two other clients purportedly to settle tax obligations with the IRS; at least $199,000 from a client to negotiate a settlement with the IRS; $141,000 from a client to settle debts with IRS and a lender; and $165,000 from a client purportedly to negotiate a loan modification with a lender. In each instance, RESSLER used the monies for other purposes.

Throughout the scheme, including as relating to the monies discussed above, RESSLER would improperly use client monies to pay for personal and family living expenses, to cover the expenses of his practice, and to fund payments relating to other clients and other bankruptcy estates from which he had previously improperly taken monies. As a result, RESSLER's conduct was at its core a Ponzi scheme.

By March 2016, RESSLER had reached the point that monies he improperly obtained from new clients were insufficient to cover the payment obligations owed by his prior clients whose assets were purportedly being held in trust. A number of those payment obligations were the subject of bankruptcy actions or plans being monitored by the federal bankruptcy court.

In the Spring of 2016, the U.S. Bankruptcy Court for the District of Connecticut focused on RESSLER's handling of at least two filed Chapter 11 cases involving debtors that were RESSLER's clients: 329 Greene Street, LLC (Case # 11-32184) (hereinafter "329 Green Street") and Eternal Enterprises, Inc. (Case # 14-20292) (hereinafter "Eternal Enterprises").

In or about August 2013, the debtor 329 Greene Street settled a legal malpractice claim for $450,000. RESSLER was to deposit the funds into the debtor-in-possession bank account for the benefit of the debtor and its creditors. Instead, the funds were deposited into RESSLER's IOLTA account on or about August 6, 2013, and, over the next several months, most of the deposited funds were used by RESSLER for purposes other than the obligations of the debtor's bankruptcy, such as writing checks for other matters, including the check and wiring referenced below.

William F. Dow, *Esq.*
*Page 15*

Similarly, between May and March, 2016, the debtor Eternal Enterprises and its creditor(s) entrusted RESSLER with "adequate protection" payments of approximately $321,409 on RESSLER's representation that such assets were being held for the benefit of the debtor's bankruptcy estate and its creditors. The relevant funds were deposited into RESSLER's IOLTA account. Most of the deposited funds were used by RESSLER for purposes other than the obligations of the debtor's bankruptcy.

From in or before August 2013 through in or about March 2016, in the District of Connecticut and elsewhere, the defendant PETER RESSLER knowingly, willfully and with intent to defraud devised and intended to devise a scheme and artifice to defraud the Relevant Victims by means of materially false and fraudulent pretenses, representations and promises, which scheme and artifice is set forth above (Paragraphs 9-19 of the Information). As a result of the scheme, RESSLER exposed the Relevant Victims to a risk of loss and, in fact, the Relevant Victims suffered significant losses. On or about September 26, 2013, in the District of Connecticut and elsewhere, having devised and intended to devise a scheme and artifice to defraud the Relevant Victims by obtaining money and property by means of materially false and fraudulent pretenses, representations and promises as set forth above, and for the purpose of executing such aforementioned scheme and artifice, RESSLER caused the transmission of certain items by means of wire communications in interstate commerce, including, among other wirings, the processing of check No. 36065 for $50,000 from RESSLER's IOLTA account, which was duly negotiated by wire from the State of Connecticut through the Federal Reserve system outside of the State of Connecticut to permit funds to be transferred from RESSLER's IOLTA account for the payment of an expense unrelated to the relevant debtor's estate.

The defendant PETER RESSLER, a person who had access to property belonging to the bankruptcy estate of a debtor as an attorney or other officer of the U.S. Bankruptcy Court, knowingly and fraudulently appropriated to his own use and embezzled property belonging to that bankruptcy estate, as set forth in greater detail above regarding the *329 Green Street* matter (Paragraphs 17 and 18 of the Information).

The defendant PETER RESSLER, a person who had access to property belonging to the bankruptcy estate of a debtor as an attorney or other officer of the U.S Bankruptcy Court, knowingly and fraudulently appropriated to his own use and embezzled property belonging to that bankruptcy estate, as set forth in greater detail above regarding the *Eternal Enterprises* matter (Paragraphs 17 and 19 of the Information).

From in or before August 2013 through in or about March 2016, in the District of Connecticut and elsewhere, the defendant PETER RESSLER, an attorney and officer of the U.S. Bankruptcy Court, knowingly, willfully and with intent to defraud devised and intended to devise a scheme and artifice to defraud the U.S. Bankruptcy Court and Relevant Victims, which scheme and artifice is set forth above (Paragraphs 9-19 of the Information).

On or about September 9, 2014, in the District of Connecticut and elsewhere, having devised and intended to devise a scheme and artifice to defraud the bankruptcy court and Relevant Victims by obtaining money and property by means of materially false and fraudulent

William F. Dow, *Esq.*
*Page 16*

pretenses, representations and promises as set forth above, and for the purpose of executing such aforementioned scheme and artifice, RESSLER made the material false statements in a bankruptcy proceeding under Title 11, as set forth in the paragraphs a-c above (Paragraph 12 of the Information).

The parties agree that the relevant Guidelines loss is approximately $3.4 million at this time, and thus falls within the Guidelines loss range of $1.5 million to $3.5 million.

This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional relevant offense conduct to the Court in connection with sentencing.

_____
PETER RESSLER
The Defendant

_____
CHRISTOPHER W. SCHMEISSER
Assistant United States Attorney

_____
WILLIAM F. DOW, ESQ.
Attorney for the Defendant

William F. Dow, *Esq.*
Page 17

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A. The order of restitution may include:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense, the order of restitution shall require the defendant to:

    A. Return the property to the owner of the property or someone designated by the owner; or

    B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

    The greater of -
    (I)  the value of the property on the date of the damage, loss, or destruction; or

    (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

    A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

    B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

    C. Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the court-ordered restitution, the court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, or a modification of the conditions of supervised release, or in the defendant being held in contempt under 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3614, 3613A. The Court may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.