

**Lippes Mathias Wexler Friedman LLP**

Eric M. Soehnlein
*Associate*
esoehnlein@lippes.com

October 10, 2017

**VIA ECF FILING**
Alfred V. Covello, USDJ
United States Courthouse
450 Main Street - Suite 125
Hartford, Connecticut 06103

Re:   United States v. Peter Ressler
      No. 3:17-cr-00123

Judge Covello:

On behalf of Peter Ressler, we write in response to the October 5, 2017 letter from Judge Julie Ann Manning, Chief United States Bankruptcy Judge for the District of Connecticut.

## I. Introduction

Mr. Ressler understands he engaged in serious wrongdoing. He knows that his actions compromised the public's trust in the bankruptcy system and the legal profession. He also appreciates the time and effort required by the Bankruptcy Court and its staff to address the crisis created by his misconduct.

Mr. Ressler is deeply sorry for the anguish and turmoil he caused to the Bankruptcy Court and to his former clients. He is grateful for the efforts of Judge Manning, her staff and other practitioners in addressing a tumultuous situation to protect his former clients.

While Mr. Ressler does not intend to downplay the seriousness of his misconduct or its consequences, some aspects of Judge Manning's recent letter warrant further clarification. That clarification is provided below.

## II. Mr. Ressler's Actions After his Confession Were Designed to Assist his Former Clients and the Bankruptcy Court

Judge Manning's letter mischaracterizes many of Mr. Ressler's actions after he confessed his misconduct to federal prosecutors. The Court should disregard that mischaracterization.

As a threshold matter, Judge Manning's letter suggests that Mr. Ressler's resignation from the bar is further evidence of his disregard for his former clients and the bankruptcy system. That is not the case. Immediately prior to his resignation, Mr. Ressler admitted to serious wrongdoing that was



October 10, 2017
Page 2

committed, at least in part, through the practice of law. As part of his efforts to highlight his misdeeds for criminal and civil authorities and to attempt to right his wrongs, Mr. Ressler made the timely, appropriate and necessary decision to resign from the practice of law. While that resignation caused work for the Bankruptcy Court and its practitioners, in the view of criminal authorities and Mr. Ressler's counsel it would have been inappropriate for him to continue to practice in any capacity after he confessed his wrongdoing.

Critically, and perhaps more importantly, after Mr. Ressler's resignation he did all he could to assist his former clients. He cooperated with the authorities charged with the reassigning his cases and transitioning his files. He provided access to files, readily shared information, and undertook what limited steps he believed were permissible to keep his clients abreast of further developments. This included work with Bankruptcy Court personnel, various assigned trustees, and his own counsel to ensure client files and relevant information relating to those clients were taken account of and forwarded to the appropriate party for further handling.

In fact, contrary to the suggestion in Judge Manning's letter, the consolidation of contempt proceedings against Mr. Ressler was a process initiated by Mr. Ressler and his counsel to streamline and facilitate actions designed to protect Mr. Ressler's former clients. Indeed, very early in the process, Mr. Ressler realized the need to simplify the process for his former clients and the Court to keep abreast of developments and obtain restitution. To that end, through counsel Mr. Ressler moved to consolidate the contempt proceedings, which enabled all involved parties to have a single point of reference for what had previously been a multiplicity of individual contempt motions. Consolidation assisted his former clients to obtain disgorgement orders and other relief that has and continues to assist them in seeking redress from the Client Security Fund and elsewhere.

In the same vein, Judge Manning's letter improperly suggests that Mr. Ressler had inappropriate interaction with former clients after his resignation. As was set forth more fully in Mr. Ressler's Sentencing Memorandum, that is not the case. The Court's Opinion (Exhibit A to Judge Manning's letter) acknowledged that while Mr. Ressler's communications "could be construed as the unauthorized practice of law," there was no such finding. More importantly, once the exact scope of Mr. Ressler's permissible involvement with former clients and the Bankruptcy Court was clarified by Court Order, there was no evidence or allegation that Mr. Ressler acted inappropriately or failed to comply with the Order.

Finally, and as was also addressed in Mr. Ressler's Sentencing Memorandum, Mr. Ressler's decision to assert his Fifth Amendment rights in the civil proceedings was done on the advice of counsel and should not be

50 Fountain Plaza, Suite 1700   •   Buffalo, NY 14202   •   phone: 716.853.5100   •   fax: 716.853.5199   •   lippes.com



October 10, 2017
Page 3

used against him at sentencing. In response to civil authorities, Mr. Ressler provided testimony on at least five occasions. He provided honest answers to questions relating to his personal finances and assets as well as to specific matters and specific clients. With the exception of his first appearance to provide testimony (where counsel advised him to invoke as to all questions), he only invoked his Fifth Amendment privilege as to questions designed to gain an admission as to unlawful conduct. Simply put, through testimony, Mr. Ressler provided substantial and honest information to the Bankruptcy Court, his creditors and his former clients, and Judge Manning's letter unfairly misstates the nature of his testimony and his reliance on his Fifth Amendment right.

### III. Judge Manning Mischaracterizes Mr. Ressler's Bankruptcy Proceeding

As was alluded to in Mr. Ressler's Sentencing Memorandum, from the early stages of his involuntary bankruptcy, Mr. Ressler understood the need to create of the largest bankruptcy estate possible to satisfy former clients and other creditors. Unfortunately, Judge Manning's letter mischaracterizes many of the steps Mr. Ressler undertook in that regard.

First, he has worked with counsel and the Court to maximize his Estate. Initially, he decided not to resist the involuntary bankruptcy and to permit an unopposed order for relief to enter. This decision brought an end to competition among creditors to leapfrog each other to be "first in line" to capture Mr. Ressler's property.

Further, contrary to the assertions in Judge Manning's letter, there is nothing wrongful or suspicious about Mr. Ressler's entering into "reaffirmation agreements" with respect to certain assets. As was explained in the underlying bankruptcy proceeding, such agreements are undertakings to pay long term debts over time in accord with their terms. They do not evidence the existence of a cash or other assets sufficient to pay off any of the principal. In circumstances like Mr. Ressler's, commercial banks do not send loan servicing documents to debtors in bankruptcy who refuse to reaffirm. Thus, in order to continue payments on Mr. Ressler's home and the motor boat (which will be further discussed below), Mr. Ressler attempted to enter such agreements on the record in his bankruptcy proceeding. Ultimately, the debts were not "reaffirmed." Importantly, Mr. Ressler's attempt to enter reaffirmation agreements did not cost his Estate any money and in no way diminished the pool of assets available to creditors.

Judge Manning's letter also wrongly suggests that Mr. Ressler has been hiding monies from the Bankruptcy Court and former clients. That is not true. In compliance with Court orders, Mr. Ressler made a disclosure of



October 10, 2017
Page 4

assets early during the contempt proceedings. He has been subjected to examinations seeking assets, and his personal accounts and holdings have been scrutinized through the use of discovery devices by various civil authorities. The discovery process has only demonstrated that Mr. Ressler's initial disclosures and representations have been accurate.

Finally, contrary to Judge Manning's assertions, the desire to "re-affirm" and pay the debts associated with his primary residence and a motor boat do not evidence any wrongdoing on the part of Mr. Ressler. Mr. Ressler and counsel have been candid that, as this process has unfolded, Mr. Ressler and his wife have received financial help from family and friends. Those family and friends were also subjected to scrutiny by the civil authorities as a result of offering assistance to Mr. Ressler. By virtue of that help, Mr. Ressler intended to continue payments on the family home (which has been in his wife's name since at least the 1980's). Likewise, his son continued to make payments on a motor boat loan, and it was anticipated that his son would take complete ownership of and responsibility for that asset in the future. That boat burned during a sea trial conducted by marina personnel, and insurance proceeds have been collected by the Estate. The financial assistance generously provided by family and friends does not evidence any wrongdoing on the part of Mr. Ressler, and it should not be used against him at this time.

### IV. Conclusion

Mr. Ressler regrets that his actions hurt the Bankruptcy Court and his former clients. Over the last year, he has admitted his guilt and worked with the Bankruptcy Court and others to provide guidance to his former clients. Through counsel, he has assisted his former clients in obtaining redress. And he intends to continue those activities into the future. He will accept the consequences of his wrongdoing at the time of sentencing, but he respectfully requests that the Court take the above information into account so that it may better understand the facts and circumstances recounted in Judge Manning's letter.

Thank you for your time and attention in this matter.

Respectfully,

Lippes Mathias Wexler Friedman LLP

Eric M. Soehnlein